UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

FRED ERNEST LaFONTAINE,           )
                                  )
        Plaintiff                 )
                                  )
v.                                )     No. 1:10-cv-527-JAW
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
        Defendant                 )

# REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the basis that the testimony given by a vocational expert at hearing was not relevant, as a result of which the commissioner failed to carry his Step 5 burden. *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 10) at 1-4. He identifies two reasons why this is so: that the administrative law judge (i) ultimately adopted a residual functional capacity ("RFC") finding at odds with the hypothetical RFC presented to the vocational expert, whose testimony formed the predicate for the Step 5 finding, and (ii) failed to consider limitations imposed on the plaintiff as signified by

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

his consistently low Global Assessment of Functioning, or GAF, scores, ranging from 40 to 50. *See id.*[2] I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of Asperger's syndrome, major depressive disorder, recurrent, seasonal affective disorder, and obesity, Finding 2, Record at 9; that he had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk for six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, should avoid heat and wetness, should never climb ladders, ropes, or scaffolds, was limited to one- to two-step, unskilled repetitive work, could handle only occasional changes in a work setting, could have, at most, occasional, limited, brief interaction with the public, could handle occasional contact with co-workers, should not work with the public or in public places, required a routine job with few changes day to day, and was precluded by his obesity from performance at the medium and heavy exertional levels, Finding [3A], *id*. at 11; that, considering his age (30 years old, defined as a younger individual, on the date his application was filed), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 5-8, *id*. at 13-14; and that he, therefore, had not been disabled since September 3, 2008, the date his application

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM-IV-TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. at 34 (boldface omitted).

was filed, Finding 9, *id*. at 14.  The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

### A.  Variance Between RFC Determination and RFC Given to Vocational Expert

At the plaintiff's hearing, the administrative law judge asked the vocational expert whether an individual who, *inter alia*, had "a sedentary lifting capacity" could perform work existing in significant numbers in the national economy.  *See* Record at 45-46.  The administrative law judge elaborated: "I would say he has a sedentary lifting capacity, but he

testified he could carry between 10 and 20 pounds. So a modified sedentary lifting capacity. He certainly can carry more than 10 but less than 20." *Id*. at 45.

The vocational expert testified that such an individual could perform, *inter alia*, the job of bottling line attendant, a light duty job. *See id*. at 47. The following colloquy ensued between the administrative law judge and the vocational expert:

> Q  Do you have any [jobs] on a sedentary level?
>
> A  That was light. Let me look again, I inquired as to light duty because you said it was kind of modified, so I went up to light.
>
> Q  Yes.
>
> ***
>
> A  At sedentary, yes. I would say no, there would be no jobs if you want to go strictly to sedentary.
>
> Q  You'd have to modify sedentary?
>
> A  Right.
>
> Q  He could lift a little better than sedentary but not (INAUDIBLE).
>
> A  Well, that's where you just need to (INAUDIBLE).
>
> Q  The job of a bottle line –
>
> A  Bottling line attendant.
>
> ***
>
> Q  Is it light or is it –
>
> A  No, it's light. And it could very well be fully light. Because most bottling lines are automated. And the bottling line attendant has little to do along the line, it's at the end of the line. The[y] affix labels or take bottles off of the line.
>
> Q  There are no jobs at sedentary?
>
> A  No, no. I asked for that.

*Id*. at 47-48.

The administrative law judge ultimately found the plaintiff capable, in relevant part, of lifting and carrying 20 pounds occasionally and 10 pounds frequently and precluded by his obesity only from the performance of medium and heavy exertional level jobs. *See* Finding [3A], *id*. at 11. He, therefore, found the plaintiff capable of performing jobs at the light exertional capacity. *See* 20 C.F.R. § 416.967(b) (defining "light work," in relevant part, as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"; stating, "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). By contrast, "sedentary work" is defined, in relevant part, as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id*. § 416.967(a).

Despite that RFC determination, the administrative law judge stated, in discussing his Step 5 finding:

> If the [plaintiff] had the [RFC] to perform the full range of *sedentary* work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.27. However, the [plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled *sedentary* occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the [plaintiff's] age, education, work experience, and [RFC]. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as bottling line attendant, SVP 1, GED III with 470,000 jobs in the United States[.]

Record at 14 (emphasis added).

The plaintiff argues that (i) a person with a modified sedentary lifting capacity could not perform the bottling line attendant job, which the vocational expert testified unequivocally was

5

light duty, and (ii) the discrepancy between the administrative law judge's RFC determination and the RFC posited to the vocational expert "creates ambiguity as to whether the ALJ sufficiently narrowed the sedentary assumption that he asked the vocational expert to make." Statement of Errors at 3.[3] At oral argument, the plaintiff's counsel rejected the view that (i) the Step 4 finding of a capacity for light work can be taken at face value as the administrative law judge's actual Step 4 finding, and (ii) the reference at Step 5 to "sedentary" work capacity is merely a scrivener's error. He argued that, given the discussion at hearing of a "modified sedentary" capacity and the discussion at Step 5 of sedentary capacity, it is impossible to know whether the administrative law judge even intended to find a capacity for light work at Step 4, warranting reversal and remand.

I find no error. The Step 4 finding is the administrative law judge's official RFC determination. Nothing in the text of his discussion of that finding indicates that he intended to find a sedentary work capacity. *See* Record at 12-13. He explained, in relevant part, that the plaintiff had "no physical limitations, other than obesity." *Id*. at 12. Moreover, the finding that the plaintiff retained at least the RFC to perform the exertional demands of light work, including its lifting demands, is supported by substantial evidence of record. There is no expert RFC opinion of record from a treating, examining, or nonexamining source suggesting that the plaintiff had any impairment-related lifting restriction. In fact, the plaintiff himself testified at hearing that he had "no physical problems," *id*. at 28, and that he "could probably carry a sack of potatoes" weighing 10 to 20 pounds "quite a ways[,]" *id*. at 36.

---

[3] In all material respects other than lifting/carrying capacity, the RFC ultimately found by the administrative law judge is the same as that posited to the vocational expert at hearing. *Compare* Finding [3A], Record at 11 *with id*. at 45-46.

As counsel for the commissioner suggested at oral argument, the discussion at Step 5 pertaining to a "sedentary" work capacity is most reasonably viewed as a careless but harmless scrivener's error. Such errors do not necessitate reversal and remand. *See, e.g., Meacham v. Astrue*, Civil No. 09-590-P-S, 2010 WL 4412113, at *6 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010).

It is clear that a person with the RFC ultimately found by the administrative law judge at Step 4 would be capable of performing the lifting requirements of the bottling line attendant job. By definition, a person who can lift/carry 20 pounds occasionally and lift/carry 10 pounds frequently can perform the lifting/carrying requirements of light duty work. *See* 20 C.F.R. § 416.967(b).

Because the lifting/carrying capacity ultimately found by the administrative law judge is supported by substantial evidence, and a person with that capacity clearly can perform the job of a bottling line attendant, it is irrelevant whether a person with the "modified" lifting capacity posited by the administrative law judge at hearing could perform that job.

### B. Failure to Reflect GAF in RFC

The plaintiff also seeks reversal and remand on the basis that the administrative law judge omitted, from his hypothetical question to the vocational expert, limitations signified by the GAF scores assessed by the plaintiff's treating providers, Kennebec Behavioral Health and Arlene Almazan, M.D., undermining the relevance of the vocational expert testimony. *See* Statement of Errors at 4.

This point is without merit. A GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions. *See, e.g., Kornecky v. Commissioner of Soc. Sec*., 167 Fed. Appx. 496, 511 (6th Cir. 2006) ("[A]ccording to the DSM's

7

explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning. A 41-50 reflects the assessor's opinion that the subject has serious symptoms *or* serious impairment of social or occupational functioning.") (emphasis in original); *Pepin v. Astrue*, Civil No. 09-464-P-S, 2010 WL 3361841, at *8 (D. Me. Aug. 24, 2010) (rec. dec., *aff'd* Sept. 16, 2010) (same).

The treating provider notes at issue, to the extent then available, were among the record materials reviewed by a series of three Disability Determination Services ("DDS") nonexamining expert consultants tasked to assess the plaintiff's specific mental functional capacities and limitations. *See* Record at 314 (Psychiatric Review Technique Form ("PRTF") dated June 12, 2007, by David R. Houston, Ph.D., describing notes of Kennebec Behavioral Health and/or Dr. Almazan as among materials reviewed), 390 (PRTF dated December 26, 2008, by Thomas Knox, Ph.D., describing notes of Kennebec Behavioral Health and/or Dr. Almazan as among materials reviewed), 528 (PRTF dated May 27, 2009, by Brenda Sawyer, Ph.D., describing notes of Kennebec Behavioral Health and/or Dr. Almazan as among materials reviewed).

With the benefit of those treating provider notes, Drs. Houston, Knox, and Sawyer made mental RFC assessments consistent with that ultimately adopted by the administrative law judge. *Compare* Finding [3A], *id*. at 11 (plaintiff was limited to one- to two-step, unskilled repetitive work, could handle only occasional changes in a work setting, could have, at most, occasional, limited, brief interaction with the public, could handle occasional contact with co-workers, should not work with the public or in public places, and required a routine job with few changes day to day) *with id*. at 318 (Houston mental RFC opinion dated June 12, 2007, finding plaintiff capable of understanding and remembering simple instructions, carrying out simple tasks,

interacting with co-workers and supervisors, and adapting to simple changes), 394 (Knox mental RFC opinion dated December 26, 2008, finding plaintiff capable of understanding and remembering at least simple instructions, carrying out simple tasks in a normal schedule but not highly detailed/complex ones, interacting appropriately with co-workers and supervisors, but not with the public, and adapting to minor changes in routine), 532 (Sawyer mental RFC opinion dated May 27, 2009, finding the plaintiff capable of understanding and remembering non-complex tasks, attending to and persisting at simple tasks over the course of a normal workday/workweek, and interacting with co-workers and supervisors, but limited to only brief contact with the public and requiring a routine with few changes day to day).

There is no error with respect to the administrative law judge's treatment of the significance of the plaintiff's GAF scores, and the administrative law judge's mental RFC finding is supported by substantial evidence of record.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of September, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge